The complainant obtains her household water supply from a small stream having its origin in a spring on a hillside of the property of one John Pfau. The spring does not overflow. Manifestation of an underground outlet, and probable outlets of other percolating waters in the vicinity, is in seepage twenty feet from the spring where it spreads on Pfau's land, forming the head of the stream which extends through Pfau's land onto the land of the complainant, where it is intercepted by a catch-basin from which the complainant's needs are supplied by means of a pipe into her home. The overflow of the catch-basin continues the stream over complainant's lands down to a creek. The complainant charges that the overflow of the catch-basin, to insure clean water, has been interrupted by the defendant tapping the spring, which she seeks to restrain.
Early in 1932 the defendant purchased from Pfau a tract of land adjoining complainant's home, upon which she built a dwelling, in which she now lives. Before buying, her husband inquired of the complainant where she got her potable water, telling her that they would not buy unless there was an adequate supply, and was told that she obtained it from the Pfau spring, and volunteered that the defendant could get her supply from the spring, that there was enough for three or four families. The assurance influenced the purchase. The spring is on lands retained by Pfau. Pfau's deed purports to give the defendant the right to pipe the spring water to her dwelling, and, for service, she laid a pipe from her house to a catch-basin and another from the catch-basin into the spring, three inches below the surface where the inflow of the water into the pipe is regulated by a valve, *Page 24 
permitting approximately nine per cent. of the water coming into the spring to enter the pipe. The pit of the spring is of natural rock, the pool about three feet across and eight inches deep, and is surrounded by a three-foot high concrete enclosure, covered to prevent pollution. The complainant saw the defendant building her home, observed that the pipe connections were being made, was present upon frequent occasions and offered suggestions, and she supervised the construction of the concrete enclosure covering the spring, which was done at the same time, and for which she agreed to pay one-half of the costs. Later she sought permission to pipe from the defendant's catch-basin to her home, and being refused, she sought permission of Pfau to pipe into the spring, as the defendant had done, and Pfau agreed. Pfau's son had installed the defendant's catch-basin and pipes and had enclosed and covered the spring, but the complainant decided to hire someone else to do her work, which Pfau resented and refused to allow her on his land to make the connection.
The stream is a natural water course, inseparably connected with the complainant's land, undivertible without her consent and undiminishable save by reasonable use of upper riparian owners.McCarter, Attorney-General, v. Hudson County Water Co.,70 N.J. Eq. 695; Mayor, c., of Paterson v. East Jersey Water Co.,74 N.J. Eq. 85. And were it not for the complainant's conduct, as related, she would be entitled to the court's protection in the undiminished flow from the spring to the stream on her premises. Mayor, c., of Paterson v. East Jersey Water Co.,supra.
The complainant is, however, estopped from denying to the defendant the right to take water from the spring, but only to the extent that the diversion by the defendant does not deprive her of an adequate supply for her own household use. She was willing to share with her neighbor, but not to her own exclusion; the defendant could have had no other notion of her generosity. The complainant must be deemed to have waived her exclusive right to the water of the spring, but not her right thus qualified. *Page 25 
The proof is not satisfying that the defendant's withdrawal of water from the spring causes a shortage of flow into the stream, or that the flow of the stream onto the complainant's land and into her catch-basin and to the overflow of the basin, is not as it was before the defendant intervened. The contrary is demonstrated. It is established that the eight-inch head of the pool is constant; that the defendant always had an abundant supply throughout the time the complainant says the stream suffered from a lack of flow from the spring. And all she could possibly draw was the upper three inches of the pool. With this constant head of water, and the spring's outlet into the stream's subsurface, it follows to a mathematical certainty that its discharge, which shows itself in seepage twenty feet off, suffers no diminution.
The complainant says she was obliged to carry her drinking water from a neighbor's house during the past summer, but there is impressive evidence that the stream was normal and her catch-basin overflowing.
We are inclined to the view that there is more or less pique in this litigation, or perhaps it was begun, as intimated at the hearing, to establish the complainant's right in the spring, but, however that may be, it is not established that the defendant's limited withdrawal has resulted in a lessening of complainant's water supply or that she has suffered injury. Future experience may develop that the use by the defendant of the spring is to her detriment; if it be shown, the court will relieve her.
The bill will be dismissed. *Page 26